## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RICHARD LEE PAIVA | : |
| | : |
| v. | :     C.A. No. 15-116S |
| | : |
| ASHBEL T. WALL, et al. | : |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

**Background**

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72(a)) is the Cross-Motion for Summary Judgment filed by Ashbel T. Wall, the Director of the Rhode Island Department of Corrections ("RIDOC"), Maximum Security Warden James Weeden ("Weeden") and Chief Investigator of RIDOC's Special Investigations Unit ("SIU") Lynda Aul. (Document No. 55). A telephonic hearing was held on June 1, 2016 during which Plaintiff withdrew his Motion for Summary Judgment. (Document No. 44).[1] For the reasons discussed below, I recommend that the Defendants' Cross Motion for Summary Judgment (Document No. 55) be GRANTED.

**Summary Judgment**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion

---

[1] Plaintiff has never filed an opposition to Defendants' Motion for Summary Judgment and thus it could technically be GRANTED as unopposed. However, out of deference to his pro se status, Plaintiff's withdrawn Motion for Summary Judgment and his arguments at the June 1, 2016 hearing will be deemed to be his opposition.

for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough

competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249). Additionally, if the affirmative evidence presented by the nonmoving party raises a question of credibility as to the testimony provided by the moving party, summary judgment is inappropriate, and that credibility issue must be presented to the factfinders at trial. Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., 149 F.2d 359, 363 (5th Cir. 1945) ("The success of an attempt to impeach a witness is always a jury question, as is the credibility of the witnesses where they contradict one another, or themselves.").

**Facts**

Plaintiff is an inmate housed at the Maximum Security Facility within the Adult Correctional Institutions ("ACI"). (Document No. 56 at p. 1, ¶ 1). His Amended Complaint alleges a violation of 42 U.S.C. § 1983. Specifically, Plaintiff asserts that Defendants violated his right to Free Speech in violation of the First and Fourteenth Amendments to the U.S. Constitution when they denied him access to a mail order publication for which he paid, and by their subsequent refusal to identify the specific content in the publication that was prohibited by the ACI Inmate Mail Policy.

Non-privileged mail received by inmates at the ACI is subject to the Inmate Mail Policy, 24.01-6. Id. at ¶ 2. The Inmate Mail Policy provides that material may be excluded from the facility if it is determined that it is detrimental to the "security, good order or discipline of the facility, and/or if the effect of which might hinder rehabilitation of an inmate, facilitate criminal activity, or contribute to a hostile work environment." Id. at ¶ 9. Incoming printed material, including books, newspapers and periodicals, are reviewed to determine their appropriateness in

accordance with the Inmate Mail Policy. Id. at ¶ 11. Non-privileged mail that is determined to be inconsistent with the goals outlines in the Mail Policy is forwarded to an Officer for his review and assessment, and then to the Facility Warden and finally to the Special Investigations Unit. Id. at ¶ 12. Once all three of the individuals and entities have reviewed the publication in question and determined that it does not meet the criteria for entry into the facility, the inmate is notified in writing. Id. at ¶ 13.

In the present case, Plaintiff placed a mail order of a publication entitled *"Inmate Shopper for Affluent Inmates"* on or about October 17, 2013. (Document No. 31-1 at p. 3, ¶ 10). The publication provides a list of resources for inmates, including places in which to sell goods, places in which to purchase goods and pen pal resources allowing inmates to correspond with other inmates. (Document No. 56 at p. 3, ¶ 16). The publication is not subject to a blanket ban, but is reviewed on an issue-by-issue basis. (Document No. 56-1 at p. 24, ¶ 11).

On or around December 4, 2013, Mail Room Correctional Officer Vance Tyree reviewed the publication to determine its appropriateness pursuant to the criteria set forth in the Inmate Mail Policy. (Document No. 56 at p. 2, ¶ 15). Officer Tyree determined that the list of resources contained in the "*Inmate Shopper*" was detrimental to the security, good order and discipline of the facility, as a means of allowing inmates to circumvent rules, regulations and policies banning contraband. Id. at ¶ 17. Additionally, Officer Tyree noted that the publication provides resources for inmates to purchase and sell goods, which would violate the regulation and policy that inmates not enter into contracts. Id. Further, the publication provides pen pal resources that allow inmates to correspond with other inmates contrary to applicable rules, regulations and policies. Id. While inmates may correspond with pen pals, they may not do so through listings that allow inmate-to-

inmate contact. Id. at ¶ 19. Also, while inmates may purchase items for sale that are not offered at the inmate commissary, they may only do so with permission and through an approved vendor. Id. at ¶ 18.

After Officer Tyree determined that the publication was in violation of the Mail Policy, he forwarded the publication to Captain Aceto for his review and assessment. Id. at ¶ 22. Captain Aceto agreed with Officer Tyree's conclusion. Id. Warden Weeden and, ultimately, Linda Aul also agreed with the conclusion that the publication violated the Inmate Mail Policy for the reasons discussed. On or about December 4, 2013, Officer Tyree sent written notice to Plaintiff indicating that the publication was denied entry to the facility for content. Id. at ¶ 25.

Pursuant to the "Inmate Grievance Procedure" established by the RI DOC, an inmate has five days within which to file a grievance. In the present case, on December 9, 2013, Plaintiff sent a letter to the Assistant Director of Institutions and Operations at the ACI, seeking further review of the publication and a description of the specific content for which the publication was denied. (Document No. 31-2 at p. 5). After receiving no response to his letter, he filed a formal grievance on January 9, 2014. Id. at p. 6. Although his grievance was technically untimely, it was not denied for that reason. Instead, Audra Russo, the RI DOC's Acting Departmental Grievance Coordinator responded on April 10, 2014 and stated that the publication failed to meet the DOC approval criteria which is "based on security, safety, rehabilitation and appropriateness of content." (Document No. 31-2 at p. 7). On April 11, 2014, Plaintiff responded by letter to Ms. Russo seeking identification of the "specific content" for which the publication was denied. (Document No. 31-2 at p. 9). Ms. Russo responded on April 15, 2014 and noted that the procedure does not permit the identification of specific "articles, page numbers, sections of the book, etc." (Document

No. 31-2 at p. 10). On April 16, 2014 Plaintiff then filed a Level 2 Grievance again requesting the specific content for which the publication was denied. On April 29, 2014 Plaintiff received a denial of his Level 2 Grievance. Id. at p. 11. On May 9, 2015 Warden Kettle also sent a letter to Plaintiff indicating that the publication must be sent out or would be destroyed. Id. at p. 12.

**Discussion**

Paiva alleges that "[t]he publication "Inmate Shopper" contains protected free speech, which the defendants, individually and collectively, unconstitutionally prohibited the plaintiff from receiving." (Document No. 31-1 at p. 9). Plaintiff further claims that "defendants [sic] refusal to inform the plaintiff as to the specific content for which they barred [ ] "Inmate Shopper" violates his rights under the Due Process Clause of the Fourteenth Amendment...." Id. at ¶ 42. Plaintiff seeks a declaration that Defendants violated his First Amendment rights "for no credible and justifiable reason." (Document No. 31-1 at p. 10). He also seeks to be reimbursed for the cost of the publication and his costs associated with this lawsuit, and to be permitted to reorder the publication. Id.

"[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large. In the First Amendment context...some rights are simply inconsistent with the status of a prisoner or with 'legitimate penological objectives of the corrections system.'" Shaw v. Murphy, 532 U.S. 223, 229 (2001) quoting Pell v. Procunier, 417 U.S. 817, 822 (1974). "'Because the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems...' the Supreme Court generally has 'deferred to the judgments of prison officials in

upholding these regulations against constitutional challenge.'" Almeida v. Wall, No. 08-184S, 2008 WL 5377924 at * 9 (D.R.I. Dec. 23, 2008) (citations omitted).

At the telephonic hearing, Plaintiff stated that he is not challenging the Mail Policy itself, but only Defendants' application of the Policy with respect to the *Inmate Shopper*." Plaintiff contends that Defendants "abused their discretion" in denying access to the publication and that their security concerns are "grossly exaggerated." (Document No. 44-1 at pp. 6-7). In the present case, Defendants have set forth a variety of reasons that the *Inmate Shopper* potentially permits inmates to circumvent rules, regulations and policies banning contraband. Specifically, the publication could allow inmates to enter into contracts, to correspond with other inmates and to purchase items from non-approved vendors. Plaintiff is effectively asking this Court to conduct an independent review of the appropriateness of this particular publication in a prison setting. However, the role of this Court is not to second-guess the Prison Administrator's application of the RIDOC's Mail Policy to specific publications, but instead to ascertain whether Plaintiff's Constitutional rights have been violated. In the present case, the justifications for the limitations placed on Plaintiff's First Amendment rights are reasonable. See Almeida v. Wall, 2008 WL 5377924 at *9 (citing Beard v. Banks, 548 U.S. 521, 528 (2006)) ("[C]ourts owe substantial deference to the professional judgment of prison administrators."); Turner v. Safley, 482 U.S. at 86 ("[J]udgments regarding prison security are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.") (internal quotation marks omitted); United States v. Conley, 531 F.3d 56, 59 (1st Cir. 2008) ("We give great deference to a prison

administrator's determination that prison safety is at risk."); Gomes v. Fair, 738 F.2d 517, 524 (1st Cir. 1984) ("Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). Plaintiff has simply not shown that Defendants' decision as to this single publication was unlawfully based on exaggerated or fabricated security concerns, or in any way violative of his limited First Amendment rights as a prison inmate.

Plaintiff's Due Process claim fairs no better. This claim is centered on his assertion that Defendants' failure to identify the specific content for which the publication was banned violated his Constitutional rights. As outlined, Plaintiff was notified in writing that his publication was denied for content. He then corresponded with several prison officials and received review of the decision via the Grievance Policy. In Sikorski v. Whorton, 631 F. Supp. 2d 1327, 1341-1342 (D. Nev. 2009), the Court noted that "prisoners have a 'Fourteenth Amendment due process liberty interest in receiving notice that...incoming mail is being withheld by prison authorities.'" citing Frost v. Symington, 197 F.3d 348, 353 (9th Cir. 1999). This liberty interest is protected from "arbitrary government invasion," and any decision to censor or withhold delivery of mail must be accompanied by "minimum procedural safeguards." Procunier v. Martinez, 416 U.S. 396, 418 (1974). The Court in Martinez noted that the following minimum procedures were required: (1) notifying the inmate of the rejection of a letter; (2) allowing the author of the letter a reasonable opportunity to protest the decision; and (3) referring any complaints to a prison official other than the person who made the censorship decision. Id. at pp. 418-419. The facts in this case plainly demonstrate that Plaintiff received all of the trappings of due process that he was owed.

Accordingly, I recommend that Defendants' Motion for Summary Judgment as to the Due Process Claim be GRANTED.

**Conclusion**

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment (Document No. 55) be GRANTED and that the Court enter FINAL JUDGMENT in favor of Defendants on all claims in this case.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 1, 2016